**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **MARENEM, INC.,** | |
| Plaintiff, | |
| v. | Civil Action No. 5:12-CV-212 (HL) |
| **DEANNA C. JUMP**, | |
| Defendant. | |

**ORDER**

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 19). For the reasons discussed below, the motion is denied.

**I.    INTRODUCTION**

Plaintiff Marenem, Inc. was founded by Katherine and Richard Garner. Ms. Garner is a former elementary school teacher. She also holds a degree in music. Ms. Garner created teaching materials to help students at the kindergarten and first grade levels learn the fundamentals of reading and writing English. This phonics education program is named *Secret Stories - Cracking the Reading Code* ("*Secret Stories*"). According to Plaintiff, Ms. Garner created several original stories, drawings, and anecdotes to explain, in terms understandable to young children just learning to read, why certain letters and sounds go together, while others do not. The stories and illustrations help children learn and

remember the fundamentals of reading and writing. Plaintiff copyrighted *Secret Stories* and holds Copyright Registration PA 1-126-222.[1]

Defendant Deanna Jump is an educator residing in Warner Robins. She promotes, sells, and provides educational materials for children through various websites. One set of educational materials Defendant publicized, marketed, and provided customer access to is called *Spelling Chunks. Spelling Chunks* is also intended to help teach children the fundamentals of reading and writing. Like *Secret Stories*, *Spelling Chunks* uses illustrations and stories to teach phonics to children.

Plaintiff contends that *Spelling Chunks* includes text and illustrations that are substantially similar to those utilized in *Secret Stories*. Plaintiff filed this copyright infringement lawsuit on June 8, 2012. Defendant now moves for summary judgment, arguing that Plaintiff's copyright infringement fails as a matter of law because there is no substantial similarity as to any protectable expression between *Secret Stories* and *Spelling Chunks.*

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

---

[1] For the remainder of this Order, the Court will use "Plaintiff" when referring to Marenem, Inc. or Ms. Garner, as Marenem and Ms. Garner are in effect interchangeable.

56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are

reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986))."If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (internal citations omitted).

"Summary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works." <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1247 (11th Cir. 1999). "However, non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between the two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." <u>Id.</u> (citation omitted).

## III.   ANALYSIS

To establish a claim for copyright infringement, the plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361, 111 S.Ct. 1282 (1991).

4

### A.    Ownership of Valid Copyright

Defendant does not dispute that Plaintiff owns a valid copyright, and Plaintiff has provided the Court with a copy of her copyright registration. The registration certificate creates a presumption as to the validity of Plaintiff's copyright. Donald Frederick Evans & Assoc., Inc. v. Cont'l Homes, Inc., 785 F.2d 897, 903 (11th Cir. 1986). Thus, Plaintiff has satisfied the first prong of the infringement test.

### B.    Copying

In order to establish the second element of a claim for copyright infringement, Plaintiff must demonstrate that Defendant copied the constituent elements of Plaintiff's work that were original. Proof of copying may be demonstrated by direct or circumstantial evidence. Plaintiff alleges that there is both direct and circumstantial evidence of copying present in this case.

With respect to the direct copying claim, Plaintiff contends that Defendant admitted in a series of emails that she copied at least parts of *Secret Stories*. However, even if the emails can be read as admissions of direct copying, the admissions do not conclusively establish copyright infringement. "[D]irect evidence of copying does not dispense with the requirement of showing that the allegedly infringing works are 'substantially similar' to the copyrighted [work]."

SCQuARE Intern., Ltd. v. BBDO Atlanta, Inc., 455 F.Supp.2d 1347, 1359 (N.D. Ga. 2006).[2]

Whether there is direct or circumstantial evidence of copying, the key question for purposes of this motion is whether there is probative similarity between *Secret Stories* and *Spelling Chunks*.[3] "Probative similarity" requires a showing of "substantial similarity" with respect to copyrightable material. Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1224 (11th Cir. 2008) (citation omitted). Substantial similarity exists where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Original Appalachian Artworks, Inc. v. Toy Loft, 684 F.2d 821, 829 (11th Cir. 1982) (quotation omitted). But not all copying constitutes infringement. *See* Feist, 499 U.S. at 361. To satisfy probative similarity, the substantial similarity must exist with respect to copyrightable facets of the copyrighted work. Oravec, 527 F.3d at 1224.

While Defendant relies on the extrinsic and intrinsic tests for substantial similarity set forth by the Eleventh Circuit in Herzog, 193 F.3d at 1241, the circuit

---

[2] Because the Court ultimately finds that the case should go to the jury, it does not reach a conclusion as to whether there was direct copying or not. Plaintiff certainly may advance that theory before the jury.

[3] With respect to a circumstantial claim of copying, the plaintiff must show probative similarity and that the defendant had access to the copyrighted work. Peter Letterese & Assocs., Inc. v. World Institute of Scientology Enters., 533 F.3d 1287, 1301 (11th Cir. 2008). For purposes of this motion only, Defendant concedes the access requirement.

court has since described the intrinsic/extrinsic formulation as "not useful" because "the two tests ultimately merge into a single inquiry: whether a reasonable jury could find the competing designs substantially similar at the level of protected expression." <u>Oravec</u>, 527 F.3d at 1224 n. 5. Thus, the Court will not analyze the works under the intrinsic/extrinsic test advanced by Defendant.

The Court must first consider what elements of *Secret Stories* are protected. Defendant contends the only things the works have in common are unprotectable facts, ideas, and scenes á faire.[4] A basic premise of copyright law is that while expression is protected, ideas are not. 17 U.S.C. § 102(b). Material that is not original cannot be copyrighted. Broad ideas are not copyrightable. "Scenes á faire," stock scenes that naturally flow from a common theme, are not copyrightable. <u>Beal v. Paramount Pictures Corp.</u>, 20 F.3d 454, 459 (11th Cir. 1994).[5] While facts are also non-copyrightable, a "compiler's selection,

---

[4] Defendant also makes reference to the merger doctrine. This doctrine provides that "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." <u>BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.</u>, 999 F.2d 1436, 1442 (11th Cir. 1999) (*en banc*) (citation omitted). However, Defendant raised this argument for the first time in her reply brief, which means the argument is not properly before the Court and will not be considered. <u>United States v. Oakley</u>, 744 F.2d 1553, 1556 (11th Cir. 1984).

[5] Scenes á faire are expressions that are commonly associated with or naturally flow from certain themes and subjects or generic plot lines. For instance, in <u>Walker v. Time Life Films, Inc.</u>, the Second Circuit held that there is no copyright protection for common elements in police fiction, such as "drunks, prostitutes, vermin and derelict cars" and "foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop." 784 F.2d 44, 50 (2d Cir. 1986). *See also* <u>Beal</u>, 20 F.3d at 459-60

arrangement, and coordination, if original" are protectable elements of a factual compilation. BellSouth, 999 F.2d at 1440 (citing Feist, 499 U.S. at 348).

Here, the non-copyrightable idea is using text and illustrations to teach children phonetically to read and write in English. Plaintiff's expression of the idea, which is protected by copyright, is the particular words and phrases and illustrations chosen by Plaintiff to transmit the phonetic rules. For instance, Plaintiff created the original story of "The Super Hero Vowels: a, e, i, o, u" to teach that vowels have a "super power" in that they can say their own name. Plaintiff also created the story of the "Mommy e" to teach when vowels make long sounds versus short sounds. Another example is how Plaintiff chose to teach the "-ous" suffix, which is through the story or narrative of the letter "o" being left out and not being allowed to join in when it appears with "us."[6] Based on the evidence in the record, Plaintiff is the one that developed these particular stories or expressions to explain these phonics lessons. The Court disagrees with

---

(mosque-style palace with minarets scenes á faire in story about Arabian or African royalty); Evans v. Wallace Berrie & Co., 681 F.Supp. 813, 817 (S.D. Fla. 1988) ("Such similarities as using a sand dollar as currency, foods made of seaweed, seahorses for transportation and plates made of oysters or mother of pearl are not protected similarities of expression, but are more accurately characterizations that naturally follow from the common theme of an underwater civilization."); Effie Film, LLC v. Murphy, --- F.Supp.2d --, 2013 WL 1188018, at *14 (S.D.N.Y. 2013) ("if a work is to be set in Victorian England, for example, travel by carriage, glittering ballrooms, stiff dinners, conversations over tea, and tensions arising from an overly-rigid system of class and gender roles are de rigueur").

[6] These are but three examples taken from *Secret Stories*. More examples of Plaintiff's protected expression are presented *infra*.

Defendant that Plaintiff has just used generic ideas or stock elements or facts in creating its teaching system. Thus, the Court will now move on to the question of substantial similarity.

As noted above, to show "substantial similarity," one must demonstrate that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Original Appalachian Artworks, Inc., 684 F.2d at 829 (quotation omitted). Defendant has filed copies of both works with the Court. "When called upon to adjudicate a copyright dispute, a court must compare the works in question," Beal, 20 F.3d at 456, which the Court has done. While the Court recognizes that lists of similarities between the works are disfavored, Beal, 20 F.3d at 460 (quotation and quotation marks omitted); Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1215 (11th Cir. 2000), the Court is not simply counting the number of similarities and then declaring summary judgment inappropriate. "Although we identify and compare the protected expressive features of the two works, we do so not simply to count the number of similarities and differences, but rather to determine whether the work's protected expression has been copied." Baby Buddies, Inc. v. Toys R Us, Inc., 611 F.3d 1308, 1316 (11th Cir. 2010).[7]

---

[7] Analyzing these two works is a bit different than analyzing two books or films or television shows. There are no holistic categories like plot, characters, settings, mood, pace, or dialogue to compare. *See, e.g.,* Herzog, 193 F.3d at 1258-59; Beal, 806 F.Supp. at 967-69.

Both works are self-published teaching documents written in whimsical fonts. *Secret Stories* is a longer work and is structured like a book, with a cover page and table contents. Both works contain cards that illustrate a particular pronunciation or phonics lesson. The works also contain sentences of text which explain the proper pronunciations of the letter combinations using quips or stories or phrases that correspond to the illustrations. It is when the text and illustrations are compared to each other that, in the Court's opinion at least, it becomes clear that the question of substantial similarity must go to the jury.

### 1.    The Super Hero Vowels

*Secret Stories*, the copyrighted work, contains a lesson called "The Super Hero Vowels: a, e, i, o, u". The story created by Plaintiff to explain this concept states in part:

> These are the "Super Heroes" of the alphabet because they have a SUPER-special power that none of the other letters have - they can SAY THEIR OWN NAMES!

The accompanying illustrations, shown below, depict the vowels a, e, i, o, and u as super heroes, complete with capes.[8]

---

[8] The first illustration is from the teaching page which contains the text. The second illustration is the graphics-only teaching card. The Court will include both illustrations when there is some difference between the teaching page and the teaching card.




*Spelling Chunks* has a vowel lesson which just happens to also be called "Super Hero Vowels." The text presented to explain this concept states:

> a, e, i, o, u are super heroes. They each have 2 sounds.

The teaching card, shown below, refers to "Super Hero Vowels" and shows animals wearing super hero capes.



Based on the record before the Court, the "Super Hero Vowels" lesson was an original concept created by Plaintiff. There is certainly a question as to whether Defendant directly copied this concept from Plaintiff.

### 2. Mommy e

*Secret Stories* contains a lesson called "MOMMY e." The story created by Plaintiff to explain this concept states in part:

> Whenever "e" is sitting at the END of a word, or is no more than ONE LETTER AWAY from another vowel, she will always say to them <u>"YOU SAY YOUR NAME!!!!!!!"</u>

The accompanying illustration, shown below, depicts a motherly figure dressed in an apron with her vowel children.



*Spelling Chunks* has a lesson which just happens to also be called "Mommy e." The text presented to explain this concept states:

> When mommy e is at the end of a word she tells her children <u>a, e, i, o, u</u> to say their name.

The teaching card, shown below, refers to "Mommy e" and shows a motherly figure with her children, telling them to "Say Your Name."



Based on the record before the Court, the "Mommy e" lesson was an original concept created by Plaintiff. There is a question as to whether Defendant directly copied this concept from Plaintiff.

### 3.    ea, ee, oa, ai, ui, ue

*Secret Stories* contains a lesson called "ea, ee, oa, ai, ui, ue." The story created by Plaintiff to explain this concept states:

> When two vowels go a walking, the <u>FIRST</u> one does the talking, and it <u>ALWAYS SAYS ITS NAME!</u>

*Spelling Chunks* also has a lesson for a two-vowel combination, and the text presented to explain this concept states:

> When 2 vowels go walking the first one does the talking.

These lessons are nearly word-for-word identical, raising questions about copying.

### 4.    qu

*Secret Stories* contains a lesson called "qu." The story created by Plaintiff to explain this concept states:

> "q" would never go anywhere without her BEST buddy "u" and together they make <u>ONE</u> sound.

The accompanying illustration, shown below, depicts two friends hugging each other tightly.



*Spelling Chunks* also has a "qu" lesson, and the text presented to explain the concept states:

<u>Q</u> never goes anywhere without her little buddy <u>u</u>.

The teaching card, shown below, shows two bears hugging each other.



The notable similarity between the two lessons is the use of the word "buddy." There are any number of words one could use to make the same point that come to mind more immediately - friend, pal, or playmate for instance. The decision by Defendant to also use the word buddy in her "qu" lesson raises some questions.

**5.    eu, ew**

*Secret Stories* contains a lesson called "eu, ew." The story created by Plaintiff to explain this concept states:

These letters are very "prim and proper" little girls who are DEATHLY afraid of mice, and whenever they see one, they jump up on top of the table and scream "ooooooooooooooooooo!"

The accompanying illustration, shown below, depicts two little girls screaming "ooooo!" while standing on a table and pointing at a mouse.



OOOOOOO!

*Spelling Chunks* also has a "eu, ew" lesson, and the text presented to explain the concept states:

What do eu and ew say? /oo/ I saw a mouse!

The teaching card, shown below, shows a boy saying "ooooooo!" upon seeing a mouse.

16



The notable similarity between the two lessons is the use of the mouse as the thing that scares the children. While mice probably do scare children and many adults, children are also afraid of spiders, snakes, bugs, clowns, and ghosts, to name but a few things. The decision by Defendant to also use a mouse in her "eu, ew" lesson raises questions.

**6.    ous**

*Secret Stories* contains a lesson called "ous." The story created by Plaintiff to explain this concept states:

> Poor little "o" is always left out with these two,
> and never allowed to join in. They tell her - "It's
> just US!!"

The accompanying illustration, shown below, depicts two friends (the "u" and the "s") happily hugging each other with a hand thrown in the air. The third child, the letter "o", is sitting on the ground with her back to the others crying.



*Spelling Chunks* also has an "ous" lesson, and the text presented to explain the concept states:

> When the three friends <u>ous</u> get together and play,
> poor <u>o</u> is left out and it's all about /us/.

The teaching card, shown below, shows two friends (the "u" and the "s") happily hugging each other. The "u" has her hand thrown in the air. The third child, the letter "o", is sitting on the ground with his back to the others. Again, the similarities between the text and the illustration raise questions about copying.



18

Without listing the exact text or inserting the illustrations, the Court notes several other similarities in the lessons. For "al," *Secret Stories* states that these letters love to play with balls. *Spelling Chunks* states that "al" likes to play ball. For "er, ir, ur", *Secret Stories* states that these letters love to go riding in the car, but they are terrible drivers and always end up slamming on their brakes, making the sound "ERRRR!" *Spelling Chunks* states that these letters make the sound of a car stopping suddenly. Both illustrations for "er, ir, ur" show cars with their back wheels off the ground as if stopping suddenly. For the phrase "or," both illustrations show girls contemplating whether they should have ice cream or a cupcake or other food. In the "au, aw" lesson, *Secret Stories* shows the letters as two children in love. *Spelling Chunks* shows two lovebirds. For the "ay, ey" lesson, both works use the theme of a cool character saying "aaayyyy" in a manner reminiscent of The Fonz from "Happy Days." The *Secret Stories* text says that "[t]hese letters are just too cool and love to be like "The Fonz" with thumbs up saying 'AAAAAAAAYYYYYYY!" The *Spelling Chunks* text says that the "[l]etters a̲ y̲ and a̲ e̲ are so cool they put their thumbs up and say /a/." Just like the *Secret Stories* lesson refers to someone as being too cool, the cat in the *Spelling Chunks* illustration also says "I'm too cool." For the "kn, wr, mb" lesson, the illustrations in both works show a person behind the letter that is pronounced (i.e., the "n" in words like knob or knight) with his or her hands thrown up in the

air. For "ce, ci, cy" and "ge, gi, gy," both lessons are done to the Mexican Hat Dance. Both lessons for "gh" incorporate ghosts and fright. Both works teach the concept of the "Sneaky Y." And finally, both works use the idea of the "-ion" suffix as being tired and yawning to teach its pronunciation.[9]

There are 31 phonetics lessons in both *Secret Stories* and *Spelling Chunks*. Of the 31 lessons, 26 are for the same letters or letter combinations.[10] And of those 26, there are 16 lessons which show some similarity in either the text or the illustration or both. The similarities involve copyrightable material and are substantial from the point of view of the lay reader. *See* Herzog, 193 F.3d at 1248. Certainly there is enough to get the substantial similarity question to the jury.

While Defendant contends that none of the text or illustrations in *Spelling Chunks* is identical to any of the text or illustrations in *Secret Stories*, the works do not have to be identical for a plaintiff to get past summary judgment on an infringement claim. Rather, "there must be sufficient congruence between the original elements of the copyrighted work and the copied work such that a jury

---

[9] The Court recognizes that there are other lessons in *Spelling Chunks* that Plaintiff contends are substantially similar to those in *Secret Stories*. (*See* "th," "ph," "oi, oy"). Plaintiff can certainly argue these additional lessons to the jury. For purposes of this motion, however, the Court need not speak to every similarity upon which Plaintiff relies and Defendant disputes.

[10] a, e, i, o, u; e; y; ea, ee, oa, ai, ui, ue; ar; al; er, ir, ur; or; au, aw; ou, ow; oi, oy; oo; ay, ey; eu, ew; qu; kn, wr, mb; ce, ci, cy/ge, gi, gy; ch; ph; sh; th; wh; gh; ing; ion; ous

could find infringement." <u>BUC Intern. Corp. v. Int'l Yacht Council Ltd.</u>, 489 F.3d 1129, 1148 (11th Cir. 2007). The Court believes that a jury could find infringement based on the evidence presented.

At this stage of the proceedings, the Court must consider the evidence in the light most favorable to Plaintiff and ask whether no trier of fact could find that the two works are substantially similar. While *Secret Stories* is a more refined product than *Spelling Chunks* and contains additional teaching materials and methods (Word Jail, Musical Practice Activities), the Court cannot find as a matter of law that a reasonable jury could not deem the two works to be substantially similar. "A factfinder ultimately may conclude that the similarities between the protected elements of [the two works] are not substantial, but the similarities are significant enough to create a genuine issue of material fact." <u>Peter Letterese & Assocs., Inc.</u>, 533 F.3d at 1302. As stated earlier, summary judgment is not favored in copyright cases. When construing all inferences in Plaintiff's favor, the Court finds that a jury must resolve this issue.

## III.   CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 19) is denied.

The discovery stay is lifted. The parties shall have until June 18, 2013 to complete discovery. All motions to join parties or to otherwise amend the pleadings must be filed on or before May 17, 2013. Any <u>Daubert</u> motions must be

filed on or before July 18, 2013. The Court will not consider the substantial similarity question again on summary judgment, as it believes that is a jury question. If Defendant wishes to move for summary judgment with respect to access to Plaintiff's copyrighted work, that motion must be filed on or before August 2, 2013.

**SO ORDERED**, this the 18th day of April, 2013.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh